# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARROWPOINT CAPITAL CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 2529 |
| | ) |
| BRIAN POMPA and JOSEPH CZAJA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Arrowpoint Capital Corp.'s ("Arrowpoint") motion for summary judgment and on Defendant Brian Pompa's ("Pompa") motion for summary judgment. For the reasons stated below, we deny Arrowpoint's motion for summary judgment and grant Pompa's motion for summary judgment in its entirety.

## BACKGROUND

On September 8, 2006, Pompa allegedly attended a Chicago White Sox baseball game at U.S. Cellular Field. Arrowpoint contends that during the game Joseph Czaja ("Czaja") entered a stadium restroom. Pompa allegedly waited for

1

Czaja outside the restroom exit and struck Czaja with a miniature souvenir baseball bat when Czaja exited the restroom. Pompa was allegedly arrested and subsequently pled guilty to battery in a criminal action ("Criminal Action").

On February 23, 2007, Czaja filed a civil lawsuit in the Circuit Court of Cook County, Illinois ("Czaja Action"), seeking compensation for the injuries suffered from the battery. A homeowners' insurance policy ("Policy") was allegedly issued to Pompa by Royal Indemnity Company, of which Arrowpoint is the successor in interest. Arrowpoint brought the instant action, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, seeking declarations that the injury sustained by Czaja was not caused by an "occurrence" under the Policy (Count I), and that the subject matter of the Czaja Action falls within the "expected or intended injury" exclusion in the Policy (Count II). Arrowpoint also seeks a declaration that it has no duty to defend or indemnify Pompa in the Czaja Action since he pled guilty to battery in the Criminal Action (Count III). Pompa has filed a counterclaim seeking a declaration that Arrowpoint has a duty to defend and indemnify Pompa in the Czaja Action. Arrowpoint moved for summary judgment. Pompa filed a motion for judgment on the pleadings, which we have converted into a motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against

3

whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

Although the complaint in the Czaja Action ("Czaja Complaint") contains headings and language that indicates that a negligence claim was being brought against Pompa, Arrowpoint argues that the court should look past such language and determine that the claims are not actually based on a negligence theory.

### I. *Maryland Cas. Co. v. Peppers*

In *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24 (Ill. 1976), the Supreme Court of Illinois stated that "[i]n determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty" and that "[i]f the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established." *Id.* at 28. The court also stated that a determination as to whether certain conduct was intentional or negligent in a declaratory judgment action is improper if the "issue was one of the ultimate facts upon which recovery is predicated in" the underlying action, "which had been filed considerably before the declaratory judgment action had been instituted." *Id.* at 30.

The Czaja Complaint specifically identifies its claim brought against Pompa as a negligence claim. (Czaja Compl. 14). The Czaja Complaint also contains

4

allegations such as that Pompa owed a duty of care to Czaja and that Pompa breached that duty. (Czaja Compl. 14). Thus, based upon the face of the Czaja Complaint, a determination by this court as to whether Czaja can prevail on his negligence claim would resolve an issue that "was one of the ultimate facts upon which recovery is predicated in" the Czaja Action, and would be prohibited under *Peppers*. 355 N.E.2d at 28.

II. Whether there is a Bona Fide Dispute

In *State Farm Fire and Cas. Co. v. Leverton*, 683 N.E.2d 476 (Ill. App. Ct. 1997), the court further clarified the holding in *Peppers*, making it clear that there is not an absolute bar that prohibits a court hearing a declaratory judgment action from examining the allegations in the complaint and looking past the labels of the causes of action in the underlying complaint. *Id.* at 478. In *Leverton*, the court stated that "[w]here *bona fide* disputes arise over the issue of negligence versus intentional conduct for indemnification purposes, the tort litigation should be resolved before the court decides the coverage issue in a declaratory judgment action." *Id.* Thus, there is a prohibition only where there is a bona fide dispute concerning the proper legal theory. The court in *Leverton* further indicated that there is no bona fide dispute if the allegations in the underlying suit are "plainly facetious as in" the case *Allstate Ins. Co. v. Carioto*, 551 N.E.2d 382 (Ill. App. Ct. 1990). *Leverton*, 683 N.E.2d at 479. In *Carioto*, the court stated that it did "not believe a *bona fide* controversy exist[ed] . . . where the insured's conduct, a criminal conviction resulting from that

conduct, and judicial admissions made by the insured, together provide[d] conclusive evidence that the conduct was intentional." 551 N.E.2d at 386.

### A. Allegations in Czaja Complaint

In the Czaja Action, Czaja alleges only that "outside the restroom, Pompa, without cause or provocation, waited for Czaja with a miniature baseball bat and violently struck Czaja about the head and body with a miniature novelty baseball bat purchased at U.S. Cellular field." (Czaja Compl. 2). Czaja provides no other facts that would explain the nature of the incident in question. Arrowpoint argues that the allegations that Pompa was waiting outside the restroom for Czaja and struck Czaja with the bat suggests a premeditated ambush by Pompa, and suggests that Pompa's alleged misconduct was intentional rather than negligent. Although it may not be likely, based upon the limited factual allegations included in the Czaja complaint, it is possible that some aspect of Pompa's alleged misconduct could be deemed negligent rather than intentional. Czaja bases his negligence claim against Pompa upon allegedly being struck by Pompa with the bat, and nothing in the Czaja complaint dispels all doubt that negligence was not involved in the alleged misconduct. Thus, there is a bona fide dispute in the Czaja Action as to whether Pompa's alleged actions were intentional or negligent.

Arrowpoint, in presenting its arguments, even acknowledges that there are factual scenarios in which Pompa's actions could be negligent, stating that "[t]here is no suggestion of an accident- such as Pompa inadvertently swinging the miniature

6

baseball bat while cheering for his favorite team." (Arrow. Reply 5). While there is no such suggestion in the Czaja Complaint, such a scenario is not ruled out by the factual allegations in the complaint either. For example, it is possible that Pompa was a friend of Czaja, accompanied Czaja to the restroom, and was waiting for Czaja to go back to their seats together. It is also possible that Pompa, seeing the game on an internal monitor in the stadium hallway, inadvertently swung "the miniature baseball bat while cheering for his favorite team" and struck Czaja while Czaja was exiting the restroom. Another possible scenario would be one in which Pompa waited for Czaja outside the restroom and intended only to scare and harass Czaja as a joke, but Pompa used excessive force during the roughhousing, injuring Czaja.

Arrowpoint argues that the allegation that Pompa waited for Czaja to emerge from the restroom shows that Pompa planned the attack and that Pompa did not act in self defense. (Arrow. Reply 4, 11). However, as indicated above, if, for example, Pompa was intending to play a joke on Czaja, Pompa's actions could be premeditated, not taken in self-defense, and would still be deemed negligent. We are not stating that such facts are true or even likely. It is entirely possible that Pompa did not even know Czaja and Pompa wanted to attack Czaja based on some earlier verbal altercation that occurred in the stands. The point is that Arrowpoint is attempting to fill in the gaps that rule out the possibility of negligent conduct on the part of Pompa with facts that are not in the Czaja Complaint. Arrowpoint also points out that Czaja alleges that Pompa "violently struck" Czaja, arguing that the phrase indicates intent to harm. (Czaja Compl. 2). However, the adjective "violently" could

be used to refer to either the intent behind the action or the result of the action. Pompa correctly points out that an automobile could crash in an accident and violently strike an object, but that does not mean that the crash was intentional. Thus, the allegations in the Czaja Complaint do not conclusively establish that Pompa acted intentionally.

### B. Assumption of Facts

In order to find that there is no bona fide dispute as to the nature of Pompa's alleged misconduct, Arrowpoint asks this court, in the absence of evidence, to assume certain facts that establish that Pompa's conduct was intentional rather than negligent. Such a determination would be based on an assumption of facts not in the Czaja Complaint. Under Arrowpoint's approach, we must speculate, for example, that Pompa had some sort of argument with Czaja before Czaja entered the restroom and Pompa then decided to wait for Czaja, intending to ambush and violently attack Czaja when he exited the restroom. If we assume such facts to be true, evidence could later be produced during discovery in the Czaja Action that would show that those assumed facts are unequivocally false. This court would thus have engaged in exactly the type of "dress rehearsal" as to the issues in the Czaja Action that Arrowpoint itself admits is improper. (Arrow. Reply 9). Also, even if the allegations by Czaja later are not proven, the proper consideration for the purposes of the duty to defend analysis still is limited to a consideration of the allegations in the underlying complaint. *See Employers Ins. of Wausau v. Ehlco Liquidating Trust,*

708 N.E.2d 1122, 1136 (Ill. 1999)(stating that "Illinois law is well established that where an underlying complaint alleges facts within or potentially within policy coverage, 'the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent'")(quoting in part *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926 (Ill. 1991)).

Arrowpoint contends that it is asking the court to rule solely on the allegations in the Czaja Complaint. (Arrow. Reply 10, 12). Arrowpoint argues that *Leverton* does not prevent a court from "look[ing] at the conduct alleged in the underlying complaint to determine whether the alleged conduct is within or potentially within the policy's coverage as to create a duty to defend." (Arrow. Reply 9). We agree. However, in the instant action, a look at the "conduct alleged in the underlying complaint" in the Czaja Action does not resolve whether Pompa's alleged misconduct should be deemed negligent or intentional.

Arrowpoint cites *Metropolitan Property and Cas. Ins. Co. v. Pittington*, 841 N.E.2d 413 (Ill. App. Ct. 2005), in which the court held that a "declaratory judgment action can proceed to resolution prior to the conclusion of the underlying tort suit." *Id.* at 419; (Arrow. Reply 10). However, the court in *Pittington* acknowledged the relevance of whether the complaint in the underlying action "included negligence counts." *Id.* (citing *Peppers*, 355 N.E.2d 24). The Czaja Complaint contains a negligence count brought against Pompa. The court in *Pittington* ultimately found that, despite the count labels in the underlying complaint, the "underlying tort suit

9

[wa]s based solely on theories of negligence." *Id.* However, the court in *Pittington* arrived at such a conclusion based upon the "record on appeal." *Id.* Unlike the court in *Pittington*, we have not been presented with a record that justifies a finding that Czaja's claim brought against Pompa is not based upon a negligence theory. Thus, we do not interpret the allegations in the Czaja Complaint in favor of Arrowpoint, the insurer, and assume facts that are not included in the Czaja Complaint.

### C. Interference in Czaja Action

In order to find that there is no bona fide dispute as to whether Pompa's conduct was negligent, Arrowpoint also asks this court to unjustifiably interfere in the Czaja Action. There is no explanation of key facts in the Czaja Complaint such as why Pompa was allegedly waiting for Czaja outside the restroom. Whether Czaja has pled sufficient facts in the Czaja Action to state a claim or whether Czaja should be required to plead additional facts in that action are issues that can only be addressed by the court in the Czaja Action. It would not be proper for this court to resolve such pleading issues in a declaratory judgment action. It is also not the proper role of this court to delve into evidence in the Czaja Action, ahead of the court in the Czaja Action, to fill in the factual gaps in the Czaja Complaint with added details. It is the court in the Czaja Action that has the jurisdiction to monitor discovery and the production of such evidence.

In addition, a determination that Pompa acted intentionally could have a

significant impact on the merits of the claim Czaja has brought against Pompa. Any ruling on these issues by this court might preclude Czaja from prevailing against Pompa based on the negligence claim in the Czaja Action. Pompa also contends that a determination concerning the nature of his conduct by this court would impact the negligence claims brought against the other defendants in the Czaja Action. Thus, any ruling by this court as to whether Pompa's alleged conduct was intentional would strike at the very heart of the Czaja Action. Nor should this court tell the Czaja Action court what claims are actually before it, based on nothing more than Arrowpoint's interpretation of the facts in the Czaja Complaint. All of the above would involve the type of interference with the underlying action that is barred by *Peppers*. Czaja has alleged in his complaint that he is bringing a negligence claim against Pompa and has alleged facts that could possibly support a negligence claim. Arrowpoint disputes the nature of Pompa's conduct, but, at this juncture in the Czaja Action, that is a bona fide dispute and it would not be proper for this court to interfere in the underlying proceedings in the Czaja Action. *See Carioto*, 551 N.E.2d at 386 (explaining that it would be improper for a court hearing a declaratory judgment action to make findings that would affect the issues of liability and the types of damages available in the underlying action).

### III. Effect of Guilty Plea

Arrowpoint argues that since Pompa pled guilty to battery in the Criminal

Action, he admitted that his conduct was intentional. Arrowpoint argues that a defendant must have "intentionally or knowingly" harmed an individual to be convicted of criminal battery. (Arrow. Reply 13). Pompa, on the other hand, contends that the judge in the Criminal Action indicated that Pompa should spend 60 days in jail for what he did, and that Pompa subsequently pled guilty in order to receive a sentence that did not involve incarceration. Pompa cites *Talarico v. Dunlap*, 685 N.E.2d 325 (Ill. 1997), in which the court found that the guilty plea by the insured defendant did not bind the insured in a subsequent civil action because the insured did not have an "incentive to litigate" in the criminal action and was persuaded to plead guilty in order to receive a lesser sentence. *Id.* at 329-30 (stating that "[n]egotiated pleas serve an important administrative function in our criminal justice system" and "[s]uch pleas, by design, dissuade litigation"); (Ans. Arrow. SJ 6).

Arrowpoint argues that in the instant action, unlike in *Talarico*, "[t]he record does not support that Pompa was offered a plea of a lighter offense like *Talarico*." (Arrow. Reply 14). However, the record before us is silent as to the plea negotiations in the Criminal Action. Arrowpoint has failed to produce any evidence that would contradict Pompa's contention as to the reasons for his plea.

IV. Duty to Defend and Indemnify

Arrowpoint argues that the court should determine whether it has a duty to

12

defend Pompa based upon the allegations of the complaint. (Arrow. Reply 10, 12). Under Illinois law, in order to determine if an insurer has a duty to defend an insured, "'the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy.'" *Native American Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2006)(quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (1993)). The insurer has a duty to defend "[i]f the facts alleged in the underlying complaint fall within, or even potentially within, the coverage provisions of the policy . . . ." *Id.* Arrowpoint itself cites *Lyons v. State Farm Fire and Cas. Co.*, 811 N.E.2d 718 (Ill. App. Ct. 2004), acknowledging that "[a] duty to defend arises if the complaint's allegations fall within *or potentially within* the coverage provisions of the policy." *Id.* at 721(emphasis added); (Arrow. Reply 3). Pompa also contends that he is entitled to judgment as a matter of law on the issue of the duty to defend.

As indicated above, the allegations in the Czaja Complaint are such that Pompa's alleged misconduct could be deemed to be intentional or negligent. In order to find that the allegations only depict intentional conduct, we must either interfere with the proceedings in the Czaja Action and seek out additional facts or evidence, or assume additional facts proposed by Arrowpoint that are not in the Czaja Complaint. It would also be particularly improper to accept Arrowpoint's interpretation of the allegations in the Czaja Complaint because, under Illinois law, the underlying

complaint is to be read liberally in favor of the insured, not the insurer. *Employers Ins. of Wausau*, 708 N.E.2d at 1136 (stating that "[t]he underlying complaint and the policy must be construed in favor of the insured, with all doubts resolved in the insured's favor"); *State Farm Mut. Auto. Ins. Co. v. Pfiel*, 710 N.E.2d 100, 103 (Ill. App. Ct. 1999)(stating that "[a]n insurer's duty to defend its insured in a lawsuit hinges upon a liberal reading of the complaint"). The standard for determining whether an insurer has a duty to defend is whether the allegations potentially fall within the scope of the coverage, not whether it is more likely than not that the allegations fall within the scope of the coverage. Under Illinois law, a court can find that there is no duty to defend "[o]nly if it is apparent on the face of the allegations contained in the complaint that the claim is beyond the policy's coverage limits. . . ." *Id.* In the instant action, it is not apparent on the face of the Czaja Complaint that the Policy does not cover Pompa's alleged misconduct.

Arrowpoint fails to recognize the proper standard in its arguments. Arrowpoint disputes Pompa's contention that the allegations in the Czaja Complaint could depict negligent conduct, and Arrowpoint states that "Pompa's argument is not supported by the factual allegations in the complaint." (Arrow. Reply 4). While it is true that there are not sufficient specific facts in the Czaja Complaint to conclusively establish that Pompa's alleged misconduct should be deemed negligent, such a conclusion is not ruled out by the facts in the complaint. The duty to defend standard does not, as Arrowpoint argues, require Pompa, the insured, to show that the

allegations in the Czaja Complaint establish that his conduct was negligent. Rather, Arrowpoint has a duty to defend if the allegations potentially fall within the scope of coverage, and it is Arrowpoint that has failed to rule out that potentiality.

The Policy provides that Arrowpoint will defend and indemnify Pompa for "bodily injury" that is caused by an "occurrence." (Arrow. SF Par. 15). In the Policy, an "occurrence" is defined as an "accident" that results in "[b]odily injury." (Arrow. SF Par. 15). As explained above, the allegations in the Czaja Complaint do not rule out the possibility that Pompa's alleged misconduct was the result of an accident. Arrowpoint might argue that an insured will always be able to come up with some sort of possible scenario that, although ridiculous, would justify the insured's position concerning coverage. We are not stating that a court must consider every bizarre possibility that can be imagined before ruling. In this case, based upon the absence of key facts such as why Pompa was waiting outside the restroom, it is conceivable that Pompa was not waiting with the intent to do harm to Czaja.

The exclusion provision in the Policy that Arrowpoint relies upon states that coverage does not apply for "[b]odily injury" that "is expected or intended" by an "insured." (Arrow. SF Par. 15). We cannot find, based upon the limited facts in the Czaja Complaint, that Pompa intended to cause bodily injury to Czaja. Such a finding would unjustifiably intrude into the proceedings in the Czaja Action and would require this court to assume facts that are not in the Czaja Complaint.

Therefore, based upon the above, we deny Arrowpoint's motion for summary judgment and grant Pompa's motion for summary judgment in its entirety.

## CONCLUSION

Based on the foregoing analysis, we deny Arrowpoint's motion for summary judgment and grant Pompa's motion for summary judgment in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 8, 2007